UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RICARDO IRIVE,<br><br>      Petitioner,<br><br> v.<br><br>JO GENTRY, *et al.*,<br><br>      Respondents. | Case No. 3:15-cv-00487-MMD-WGC<br><br>ORDER |
| RICARDO IRIVE,<br><br>      Petitioner,<br><br> v.<br><br>JO GENTRY, *et al.*,<br><br>      Respondents. | Case No. 2:16-cv-00241-MMD-WGC<br><br>ORDER |

**I. INTRODUCTION**

These two actions are both petitions for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Ricardo Irive, a Nevada prisoner. In each case, the respondents have filed an answer, responding to Irive's claims, and Irive has filed a reply. Both cases are fully briefed, and before the Court for resolution with respect to the merits of Irive's claims. As the two petitions raise certain identical issues, the Court rules on both in this order. The Court will deny Irive's habeas petitions.

**II. BACKGROUND**

 **A. Case No. 3:15-cv-00487-MMD-WGC—The Robbery at the Pawnshop**

Irive was convicted on August 27, 2010, following a jury trial in Nevada's Eighth Judicial District Court, in Clark County, of conspiracy to commit robbery and robbery with

use of a deadly weapon. (*See* Judgment of Conviction, Exh. 13 (ECF No. 14-14).) The crimes involved Irive and his associates robbing two customers of a Las Vegas pawnshop in the parking lot outside the pawnshop. Irive was sentenced for the conspiracy to commit robbery to thirteen months to five years in prison; for the robbery with use of a deadly weapon, he was sentenced to six to fifteen years in prison and a consecutive four to fifteen years in prison for the use of the deadly weapon, to run concurrently with the sentence for the conspiracy. (*See id.*)

Irive appealed, and the Nevada Supreme Court affirmed on November 18, 2011. (*See* Order of Affirmance, Exh. 17 (ECF No.14-18).)

Irive then filed a petition for writ of habeas corpus in the state district court on September 6, 2012. (*See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 24 (ECF No. 14-25); Supplemental Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus, Exh. 31 (ECF Nos. 15-6, 15-7).) The state district court held an evidentiary hearing, and then denied the petition. (*See* Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 (ECF No. 15-11); Transcript of Hearing, April 7, 2014, Exh. 36 (ECF No. 15-12); Findings of Fact, Conclusions of Law and Order, Exh. 39 (ECF No. 15-15).) Irive appealed from that ruling, and the Nevada Supreme Court affirmed on July 21, 2015. (*See* Order of Affirmance, Exh. 43 (ECF No. 15-19).)

On February 9, 2015, Irive filed a second state habeas petition. (*See* Second Petition for Writ of Habeas Corpus, Exh. 45 (ECF No. 15-21).) The state district court dismissed that petition, ruling it procedurally barred. (*See* Court Minutes, July 20, 2015, Exh. 48 (ECF No. 15-24); Findings of Fact, Conclusions of Law and Order, Exh. 49 (ECF No. 15-25).) There is no indication in the record that Irive appealed from the dismissal of his second state habeas petition.

This Court received Irive's original federal habeas petition, initiating this action—Case No. 3:15-cv-00487-MMD-WGC—*pro se,* on September 23, 2015. (*See* Petition for Writ of Habeas Corpus (ECF No. 6).) Respondents filed a motion to dismiss Irive's original petition on December 3, 2015 (ECF No. 14). On May 4, 2016, the Court appointed counsel

to represent Irive, and denied the motion to dismiss, without prejudice, as moot. (*See* Order entered May 4, 2016 (ECF No. 22).)

With counsel, Irive then filed an amended petition for writ of habeas corpus (ECF No. 30), now the operative petition in this case, on December 23, 2016. Irive's amended petition asserts the following grounds for relief:

> 1. Irive received ineffective assistance of counsel, in violation of his federal constitutional rights, "when his trial attorney failed to adequately represent him during the plea bargaining stage by allowing a plea negotiation offered by the district attorney to lapse." (Amended Petition (ECF No. 30) at 14.)
>
> 2. Irive's conviction and sentence are in violation of his federal constitutional rights because the State "produced insufficient evidence at trial to support a deadly weapon enhancement." (*Id.* at 17.)
>
> 3. Irive received ineffective assistance of counsel on his direct appeal, in violation of his federal constitutional rights, because of "counsel's failure to preserve the record for Nevada Supreme Court review of the assignment of error that the trial court imposed a harsher sentence because Irive exercised his constitutional right to a jury trial." (*Id.* at 21.)

On February 14, 2017, respondents filed a motion to dismiss Irive's amended petition (ECF No. 32), contending that Ground 2 is barred by the statute of limitations. The Court denied the motion to dismiss on August 7, 2017 (ECF No. 37).

Respondents then filed an answer, responding to all three of Irive's claims, on November 6, 2017 (ECF No. 38). Irive filed a reply on February 27, 2018 (ECF No. 43).

### B. Case No. 2:16-cv-00241-MMD-WGC – The Kidnapping and Robbery

Irive's other case involves Irive and an associate picking up a woman along a Las Vegas street, kidnapping her, and robbing her of her purse. In that case, Irive was convicted on August 31, 2010, after a jury trial in in Nevada's Eighth Judicial District Court, in Clark County, of first degree kidnapping, conspiracy to commit robbery and robbery. (*See* Judgment of Conviction, Exh. 25 (ECF No. 16-8).) Irive was sentenced to life in prison with the possibility of parole after five years for the kidnapping; for the conspiracy to commit robbery, he was sentenced to two to six years in prison; for the robbery, he was sentenced to sixteen months to fifteen years in prison; the sentences are to be served

///

concurrently with one another, and concurrently with his sentences in any other cases. *See id.*

Irive appealed, and the Nevada Supreme Court affirmed on December 27, 2011. (*See* Order of Affirmance, Exh. 31 (ECF No.16-14).)

Irive filed a petition for writ of habeas corpus in the state district court on August 8, 2012. (*See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 36 (ECF No. 16-19).) The state district court denied the petition on December 31, 2012. (*See* Findings of Fact, Conclusions of Law and Order, Exh. 43 (ECF No. 17-2).) Irive appealed, and the Nevada Supreme Court reversed and remanded on January 24, 2014, on account of the district court's failure to appoint counsel. (*See* Order of Reversal and Remand, Exh. 45 (ECF No. 17-4).) Back in the state district court, after appointment of counsel, Irive filed a supplemental memorandum of points and authorities in support of his petition. (*See* Supplemental Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 50 (ECF No. 17-9).) The state district court held an evidentiary hearing on November 7, 2014. (*See* Transcript of Evidentiary Hearing, November 7, 2014, Exh. 52 (ECF No. 17-11).) The state district court denied the petition on December 2, 2014. (*See* Findings of Fact, Conclusions of Law and Order, Exh. 54 (ECF No. 17-13).) Irive appealed again, and the Nevada Supreme Court affirmed on December 18, 2015. (*See* Order of Affirmance, Exh. 61 (ECF No. 17-20).)

Irive initiated his federal habeas action regarding this conviction—Case No. 2:16-cv-00241-MMD-WGC—*pro se*, on February 5, 2016. After the Court appointed counsel, Irive filed a second amended petition for writ of habeas corpus, which is the operative petition, on August 30, 2016 (ECF No. 14). Irive asserts the following claims in his second amended petition:

> 1. Irive's kidnapping conviction is in violation of his federal constitutional rights because the State "produced insufficient evidence at trial to support the charge of kidnapping." (Second Amended Petition (ECF No. 14) at 13.)
>
> 2. In violation of Irive's federal constitutional rights, "[t]he prosecutor shifted the burden of proof and commented on Irive's exercise of his right to remain silent." (*Id.* at 15.)

4

3. Irive received ineffective assistance of counsel, in violation of his federal constitutional rights, "when his trial attorney failed to adequately represent him during the plea bargaining stage by allowing a plea negotiation offered by the district attorney to lapse." (*Id*. at 18.)

The respondents filed an answer, responding to all Irive's claims, on October 31, 2016 (ECF No. 21). Irive filed a reply on March 2, 2017 (ECF No. 27).

## III. DISCUSSION

### A. 28 U.S.C. § 2254(d)

A federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the particular case. *See Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id*. at 409-10; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

///

## B. The Claim Common to Both Cases: The Plea Bargaining

In both of his petitions, Irive claims that his trial counsel was ineffective because of her handling of plea bargaining with the prosecutor; specifically, Irive claims that the prosecutor made a favorable plea offer, encompassing both of Irive's cases, Irive's trial counsel advised him not to accept that offer, so that she could do further investigation, Irive rejected the offer, and then Irive's trial counsel let the offer expire, such that it was no longer available, and Irive had to face trial in both cases. (*See* First Amended Petition (ECF No. 30 in Case No. 3:15-cv-00487-MMD-WGC) 14-17; Second Amended Petition (ECF No. 14 in Case No. 2:16-cv-00241-MMD-WGC) at 18-21.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 556 U.S. 134 (2012), the Supreme Court applied these principles to claims of ineffective assistance of counsel in the course of plea bargaining.

Where a state court previously adjudicated the claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable under AEDPA

is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (2010) (acknowledging double deference required with respect to state court adjudications of *Strickland* claims).

In analyzing a claim of ineffective assistance of counsel, under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Irive asserted this claim in his state habeas petition in each of his two cases. The Nevada Supreme Court ruled as follows on the claim:

> Irive argues that trial counsel was ineffective for failing to inquire about and communicate to him the expiration date of a plea offer, which prevented him from accepting the offer before it was withdrawn by the State. At the evidentiary hearing, trial counsel testified that she informed Irive of the plea offer but advised him to give her time to investigate whether the plea offer would be beneficial before he considered accepting the offer. Trial counsel further testified that the prosecutor never explicitly provided an expiration date for the plea offer and that her conversations with the prosecutor left her with the impression that the plea offer would be available until trial. The district court determined that trial counsel's advice to Irive, decision to investigate, and belief as to when the plea offer would expire were reasonable in light of counsel's ongoing negotiations and communications with the prosecutor. We conclude that the district court's findings were not clearly erroneous and that substantial evidence supports the district court's decision that trial counsel's performance was reasonable. *See Strickland*, 466 U.S. at 689; *Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) (explaining that "trial counsel's strategic or tactical decisions will be virtually unchallengeable absent extraordinary circumstances" (internal quotation marks omitted).

7

1 (Order of Affirmance, Exh. 61 at 1-2 (ECF No. 17-20 in Case No. 2:16-cv- 00241-MMD-WGC at 2-3); *see also* Order of Affirmance, Exh. 43 at 2 (ECF No. 15-19 in Case No. 3:15-cv-00487-MMD-WGC at 3) (nearly identical ruling in other case).) The Court finds the state court's ruling on this claim to be reasonable.

This claim was a focus of the evidentiary hearings in Irive's state habeas cases. Irive's trial counsel testified at both of those evidentiary hearings. (*See* Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 (ECF No. 15-11 in Case No. 3:15-cv-00487-MMD-WGC); Transcript of Evidentiary Hearing, November 7, 2014, Exh. 65 (ECF No. 31-13 in Case No. 3:15-cv-00487-MMD-WGC.)[1] (It is these exhibits that the Court refers to in the following discussion of this claim.).)

It is not entirely clear what offer was extended by the prosecutor early in the negotiations; there was no written plea offer. (*See*, *e.g.*, Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 at 9 (ECF No. 15-11 at 12) ("I can't remember the specific offer.").) At the evidentiary hearing, Irive testified that he, himself, did not know the terms of the offer that the prosecutor extended. (*See* Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 at 60-64 (ECF No. 15-11 at 63-67).) However, there is evidence that the offer was for Irive to plead to "[r]obbery with use in one case and robbery with right to argue in the other case." (Transcript of Evidentiary Hearing, November 7, 2014, Exh. 65 at 11 (ECF No. 31-13 at 6).) Any offer extended by the prosecutor was contingent upon both Irive and his co-defendant accepting the offer. (*See*, *e.g.*, *id.* at 10 (ECF No. 15-11 at 13) ("And I remember having conversations with Mr. Maningo [co-defendant's counsel] about the fact that it was contingent, because Mr. Maningo may have gently given me a bit of a hard time, because he was trying to negotiate his cases too."); *id.* at 29-30 (ECF No. 15-11 at 32-33); *id.* at 45-47 (ECF No. 15-11 at 48-50); *see also* Transcript of Evidentiary Hearing, November 7, 2014, Exh. 65 at 11 (ECF No. 31-13 at 6).)

///

///

---

[1] These same transcripts can be found in Case No. 2-16-cv-241-MMD-WGC, Exhibit 47 (ECF No. 17-6) and Exhibit 52 (ECF No. 17-11).

Whatever the exact nature of the offer presented by the prosecutor, Irive's counsel testified that she declined the offer on Irive's behalf, after consulting with him, so that she could do further investigation:

> Well we—Mr. Irive and I talked about his choices, which would be either to fight both of his cases or go to trial. He—we made a decision together to go to trial on both cases. But all the while we were still open to negotiating with the District Attorney at the time which was Mr. Stege.

(Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 at 8 (ECF No. 15-11 at 11); *see also id.* at 11 (ECF No. 15-11 at 14); *id.* at 43-44 (ECF No. 15-11 at 46-47); *id.* at 57-58 (ECF No. 15-11 at 60-61) (Irive's testimony about declining the early offer); *see also* Transcript of Evidentiary Hearing, November 7, 2014, Exh. 65 at 12-13 (ECF No. 31-13 at 7).)

There was also testimony by Irive's counsel to the effect that she made one or more counter-offers on Irive's behalf, but the prosecutor never accepted any of those. (*See* Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 at 30 (ECF No. 15-11 at 33) ("[W]henever I gave a counter offer I was never given—there were times when I wasn't given a straight yes or no …."); *id.* at 45 (ECF No. 15-11 at 48) ("[L]ike I said when I gave a counter offer it wasn't clear if it was always — you know, we went back and forth for a greater part of a year."); *see also* Transcript of Evidentiary Hearing, November 7, 2014, Exh. 65 at 9 (ECF No. 31-13 at 6) ("He gave me an offer at one point and I gave him a counteroffer and I kept waiting for him to get back to me as to the counteroffer and he wouldn't.").)

What is unclear—what Irive has never established—is what was left of the prosecution's offer, if anything, after counsel declined it and made counter-offers. (*See* Transcript of Evidentiary Hearing, March 6, 2014, Exh. 35 at 9 (ECF No. 15-11 at 12) ("[I]t wasn't made clear all the time as we were going back and forth."); *id.* at 10 (ECF No. 15-11 at 13) ("[T]he negotiations change with each contact I had with Mr. Stege and I was never sure there was quite a meeting of the minds…."); *id.* at 30 (ECF No. 15-11 at 33) ("[I]t was difficult for me to reach an understanding as to what was given to me." "I didn't

1 feel like I really had a meeting of the minds with Mr. Stege.").) And, if there was anything
2 left of the offer made by the prosecution, the evidence is that there was not a set date
3 upon which the offer would expire. (*See id.* at 13 ECF No. 15-11 at 16) (testimony that
4 Irive's counsel was not given an expiration date).)

5 Under these circumstances, as revealed by the evidence at the state-court
6 evidentiary hearing, this Court finds that the Nevada Supreme Court's ruling on this claim
7 was not objectively unreasonable. There is no showing that Irive's counsel acted
8 unreasonably in advising Irive to decline the early offer in order to investigate further.
9 There is no showing that Irive's counsel performed unreasonably with respect to any
10 counter-offer she made on Irive's behalf. There is no showing that Irive's counsel
11 performed unreasonably with respect to any further offer extended by the prosecutor after
12 she declined the first offer. And, there is no showing that there was ever any definite
13 expiration date set by the prosecutor with respect to any offer.

14 Furthermore, there is no showing of prejudice. At the evidentiary hearing, Irive
15 could not state the terms of any offer extended by the prosecutor. And, Irive's counsel
16 could only describe in very general terms the offer that Irive believes was allowed to lapse.
17 It appears to be speculation by Irive that there was an open offer that he would have been
18 willing to accept after he declined the original offer.

19 Affording counsel deference with respect to her handling of the plea negotiations,
20 and affording the Nevada Supreme Court the deference it is due with respect to its ruling
21 on this claim, this Court concludes that the Nevada Supreme Court's ruling, that there is
22 no showing of ineffective assistance of counsel with regard to counsel's handling of Irive's
23 plea negotiations, was not contrary to, or an unreasonable application of, *Strickland*, or
24 any other Supreme Court precedent. The Court will deny habeas relief on this claim in
25 both Irive's cases.

### C. Ground 2 in Case No. 3:15-cv-00487-MMD-WGC

27 In Ground 2 of his amended petition in Case No. 3:15-cv-00487-MMD-WGC, Irive
28 claims that the State produced insufficient evidence at his trial, in the pawnshop robbery

case, to support imposition of the deadly weapon enhancement. (*See* First Amended Petition (ECF No. 30) at 17-21.)

Irive asserted this claim on his direct appeal, and the Nevada Supreme Court ruled as follows on the claim:

> … [A]ppellant Ricardo Irive asserts that insufficient evidence supports his conviction for robbery with the use of a deadly weapon because the State failed to prove that he knew his co-offender used a deadly weapon. We disagree because the evidence, when viewed in the light most favorable to the State, is sufficient to support the conviction beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).
>
> The jury heard testimony that Irive and his co-offender approached the victims outside of the pawnshop and demanded money. When the victims did not comply, the co-offender said he had a gun and would shoot them if they ran, and lifted up his shirt to reveal the handle of a gun tucked into his waistband. Irive then pulled the necklace off of one victim's neck and punched him in the jaw. Irive hit the victim a second time and took his wallet. He and his co-offender then left the scene of the robbery together. From this evidence a juror could reasonably infer that Irive knew of the use of the gun by his co-offender and was thus subject to the deadly weapon enhancement. [Footnote: Irive does not contest that he was liable as a principal for the robbery or that his co-offender was armed with and used a deadly weapon in the commission of the robbery. *See Brooks v. State*, 124 Nev. 203, 210, 180 P.3d 657, 661 (2008).] *See* NRS 193.165(1); *Brooks*, 124 Nev. at 210 n.27, 180 P.3d at 661 n.27 (an unarmed offender uses a deadly weapon if he takes a victim's property while a co-offender holds the victim at gunpoint (citing *Anderson v. State*, 95 Nev. 625, 630, 600 P.2d 241, 244 (1979))).

(Order of Affirmance, Exhibit 17 at 1-2 (ECF No. 14-18 at 2-3).)

The Due Process Clause of the Fourteenth Amendment prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established the standard for a federal habeas court's review of the sufficiency of evidence. Under *Jackson*, a habeas petitioner claiming insufficiency of the evidence may obtain relief only if "it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Id*. at 319. Federal courts look to state law to determine the substantive elements of the criminal offense. *Id*. at 324 n.16.

Applying these standards, it is plain that there was sufficient evidence presented at trial for application of the deadly weapon enhancement. As the Nevada Supreme Court pointed out, there was evidence that, during the course of the robbery, Irive's co-offender said he had a gun and would use it if the victims did not comply, and he lifted up his shirt to reveal what appeared to the victims to be the handle of a gun tucked into his waistband. The evidence indicated that these actions by Irive's co-offender facilitated the robbery. A juror could reasonably have inferred that Irive knew of the use of a gun by his co-offender. The state courts' ruling on this claim was reasonable. The Court will deny habeas corpus relief on Ground 2 of Irive's amended petition in Case No. 3:15-cv-00487-MMD-WGC.

### D. Ground 3 in Case No. 3:15-cv-00487-MMD-WGC

In Ground 3 of his amended petition in Case No. 3:15-cv-00487-MMD-WGC, Irive claims that he received ineffective assistance of counsel on his direct appeal, in violation of his federal constitutional rights, because of "counsel's failure to preserve the record for Nevada Supreme Court review of the assignment of error that the trial court imposed a harsher sentence because Irive exercised his constitutional right to a jury trial." (*See* First Amended Petition (ECF No. 30) at 21-24.)

Irive asserted this claim in his state habeas action, and, on the appeal in that case, the Nevada Supreme Court ruled on the claim as follows:

> Irive argues that appellate counsel's failure to provide this court with an audio-visual recording of the sentencing hearing precluded this court from considering on direct appeal whether the trial court erred in imposing a harsher sentence based on Irive's failure to take responsibility for his actions and his exercise of his constitutional right to trial. Irive fails to demonstrate a reasonable probability that, had appellate counsel provided this recording on direct appeal, his sentence would have been vacated. The audio-visual recording was played at the evidentiary hearing, and the record indicates that the trial court may have stated, "he didn't," after trial counsel argued that Irive had taken responsibility for his actions. At no point did the trial court state that it based its sentence on Irive's failure to take responsibility or his decision to go to trial and testify in his own defense; rather the trial court stated that it was imposing a harsher sentence because of Irive's criminal conduct and history. *See Brake v. State*, 113 Nev. 579, 584-85, 939 P.2d 1029, 1033 (1997). Therefore, we conclude that the district court did not err in denying this claim.

12

(Order of Affirmance, Exhibit 43 at 4-5 (ECF No. 15-19 at 5-6).)

The Court finds this claim to be without merit. Irive makes no showing that the trial court based its sentencing of Irive, to any extent, on Irive's decision to go to trial and testify in his own defense. There is no showing that the outcome of the appeal would have been different had counsel provided the recording in question. Irive does not show that his counsel's performance was unreasonable, and he does not, at any rate, show prejudice. The state courts' rulings on this claim was reasonable. The Court will deny habeas corpus relief on Ground 3 of Irive's amended petition in Case No. 3:15-cv-00487-MMD-WGC.

### E. Ground 1 in Case No. 2:16-cv-00241-MMD-WGC

In Ground 1 of his second amended habeas petition in Case No. 2:16-cv-00241-MMD-WGC, Irive claims that his kidnapping conviction is in violation of his federal constitutional rights because the State "produced insufficient evidence at trial to support the charge of kidnapping." (*See* Second Amended Petition (ECF No. 14 in Case No. 2:16-cv-00241-MMD-WGC) at 13-15.)

Irive asserted this claim on his direct appeal, and the Nevada Supreme Court denied relief on the claim, ruling as follows:

> … Irive argues that the evidence was insufficient to support his conviction for first-degree kidnapping because there was no showing of intent on his part and the victim's testimony was inconsistent. After reviewing the evidence in the light most favorable to the prosecution, we conclude that any rational juror would have found all of the essential elements of first-degree kidnapping beyond a reasonable doubt. *See Mason v State*, 118 Nev. 554, 559, 51 P.3d 521, 524 (2002). At trial, the victim testified that she agreed to get into the SUV driven by Irive's codefendant after the codefendant insisted that the victim show her how to get to her destination. However, upon approaching her purported destination, the codefendant continued to drive despite the victim's request to stop the SUV and let her out. Irive, who had been hiding in the back seat, grabbed the victim around her neck and demanded her gold jewelry and her purse. After the victim gave Irive her purse and explained that her jewelry was not real gold, the codefendant stopped the SUV, and Irive pushed the victim out of the SUV. This evidence was sufficient to support the conviction. While Irive contends that some of the victim's testimony contradicted her prior statements, it was for the jury to determine the weight and credibility to give the conflicting testimony. *See id.* at 559-60, 51 P.3d at 524.

(Order of Affrmance, Exh. 31 at. 1-2 (ECF No. 16-14 at 2-3).)

This claim is without merit. It is beyond any reasonable dispute that the ruling by the Nevada Supreme Court was reasonable. There was strong evidence presented at trial supporting Irive's kidnapping conviction. The Court will deny habeas corpus relief with respect to Ground 1 of Irive's second amended petition in Case No. 2:16-cv-00241-MMD-WGC.

### F. Ground 2 in Case No. 2:16-cv-00241-MMD-WGC

In Ground 2 of his second amended habeas petition in Case No. 2:16-cv-00241-MMD-WGC, Irive claims that his federal constitutional rights were violated because "[t]he prosecutor shifted the burden of proof and commented on Irive's exercise of his right to remain silent." (*See* Second Amended Petition (ECF No. 14 in Case No. 2:16-cv-00241-MMD-WGC) at 15-17.)

In making this claim, Irive first points out the following argument made by the prosecutor in his rebuttal closing argument:

> These—proof beyond a reasonable doubt is a burden that every single defendant has been held to in every single criminal case in every Court across the country since the country has been founded, and that is not an impossible burden, because people are convicted of crimes every single day.
>
> The Judge instructed you that beyond a reasonable doubt, reasonable doubt is one based on reason. It is not mere speculation, it is not mere possibility—

(*Id.* at 16; *see also* Transcript of Trial, June 10, 2010, Exh. 65 at 53 (ECF No. 17-24 at 16).) The defense objected on the grounds that the prosecutor was trying to quantify reasonable doubt and was shifting the burden of proof to the defense. (*See* Transcript of Trial, June 10, 2010, Exh. 65 at 53-54 (ECF No. 17-24 at 16).) In response, the prosecutor explained that he misspoke when he said defendants are held to the burden of proof, and, beyond that, he was restating the jury instruction. (*See id.*) The trial court overruled the objection. (*See id.*) Irive goes on in his claim to point out the following argument made by the prosecutor moments later:

> Now, I left a big old section in my notes here (indicating) for—to write down their saying that these crimes didn't occur.

> But if you listen to what they said, they never said these—conspiracy didn't occur, kidnapping didn't occur—

(*See* Second Amended Petition (ECF No. 14 in Case No. 2:16-cv-00241-MMD-WGC) at 16-17; *see also* Transcript of Trial, June 10, 2010, Exh. 65 at 54-55 (ECF No. 17-24 at 16).) The defense objected, on the ground that this was burden shifting. (*See* Transcript of Trial, June 10, 2010, Exh. 65 at 55 (ECF No. 17-24 at 16).) The court overruled this objection as well, stating:

> So it's clear they don't have a burden. You can comment on their, their closing. So go ahead.

(Transcript of Trial, June 10, 2010, Exh. 65 at 55 (ECF No. 17-24 at 16).) Irive claims that the prosecutor's arguments drew attention to Irive's failure to testify and implied that he had a duty to come forward with evidence. (*See* Second Amended Petition (ECF No. 14 in Case No. 2:16-cv-00241-MMD-WGC) at 17.)

Irive asserted this claim on his direct appeal, and the Nevada Supreme Court denied relief on the claim, ruling as follows:

> … Irive argues that the prosecutor committed misconduct during rebuttal closing argument because the prosecutor's comments improperly shifted the burden of proof to Irive and drew attention to his decision not to testify. We conclude that the challenged comments were improper, but that the error was harmless given the overwhelming evidence of guilt. *See Valdez v. State*, 124 Nev. 1172, 1188-89- 196 P.3d 465, 476-77 (2008). Further, to the extent that Irive argues that the challenged comments improperly referenced his failure to testify, we conclude that the comments did not directly remark on Irive's failure to take the stand and the prosecutor did not manifestly intend the comments as a reference to Irive's failure to testify on his own behalf. *See Barron v. State*, 105 Nev. 767, 779, 783 P.2d 444, 451-52 (1989).

(Order of Affrmance, Exhibit 31 at 3 (ECF No. 16-14 at 4).)

The standard set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), is the "clearly established law" governing claims of prosecutorial misconduct for purposes of habeas review under AEDPA. *See Ayala v. Chappell*, 829 F.3d 1081, 1114 (9th Cir. 2016). In *Darden*, the Supreme Court explained that "it is not enough that the prosecutor's remarks were undesirable or even universally condemned," but rather "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the

resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 180-81 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In determining whether arguments made by a prosecutor rise to the level of a due process violation, the court is to examine the entire proceedings, so that the prosecutor's remarks may be placed in their proper context. *Boyde v. California*, 494 U.S. 370, 384-85 (1990); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").

A criminal defendant has a right not to testify, and the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 616 (1965). "A prosecutor's comment is impermissible if it is 'manifestly intended to call attention to the defendant's failure to testify or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.'" *Beardslee v. Woodford*, 358 F.3d 560, 586 (9th Cir. 2004), quoting *United States v. Tarazon*, 989 F.2d 1045, 1051-52 (9th Cir. 1993).

However, "a 'comment on the failure of the *defense* as opposed to the *defendant* to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege.'" *United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991) (quoting *United States v. Castillo*, 866 F.2d 1071, 1083 (9th Cir. 1988) (emphasis in original)); *see also United States v. Tam*, 240 F.3d 797, 805 (9th Cir. 2001) ("[W]hen the government refers to 'defendant's arguments' but obviously is addressing the arguments made by defense counsel, there is no *Griffin* violation"). Read in context, the arguments of the prosecutor at issue in this case were commentary on the arguments made by defense counsel; they were not commentary on Irive's failure to testify. The prosecutor's arguments did not violate *Griffin*.

Furthermore, the prosecutor's arguments were not such as to shift the burden of proof to the defense. It was obvious—and the prosecutor confirmed in open court—that he misspoke when he said that defendants have been held to the burden of proof. The

trial court overruled the objection after hearing the prosecutor's explanation, and reinforced to the jury that the burden of proof was on the prosecution. Moreover, the prosecutor's argument that defense counsel did not claim that the crimes did not occur cannot reasonably be understood as shifting the burden of proof. And, even if the arguments of the prosecutor were arguably an improper shifting of the burden of proof, they were not such as to infect the trial with unfairness such as to render Irive's conviction a denial of due process.

The Court concludes that there was no constitutional error as asserted in this claim. The Nevada Supreme Court's ruling, rejecting this claim, was not contrary to, or an unreasonable application of, clearly established federal law as determined by United States Supreme Court. The Court will deny habeas corpus relief on Ground 2 of Irive's second amended petition in Case No. 2:16-cv-00241-MMD-WGC.

## IV. CERTIFICATE OF APPEALABILITY

The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

The Court has considered all of Irive's claims with respect to whether they satisfy the standard for issuance of a certificate of appealability. The Court determines that a certificate of appealability is warranted in each of Irive's cases. In Case No. 3:15-cv-00487-MMD-WGC, a certificate of appealability will be issued with respect to Ground 1 of Irive's amended habeas petition. In Case No. 2:16-cv-00241-MMD-WGC, a certificate of appealability will be issued with respect to Grounds 2 and 3 of Irive's second amended habeas petition.

## V. CONCLUSION AND ORDERS

It is therefore ordered that, pursuant to Federal Rule of Civil Procedure 25(d), in each of the above-captioned actions, the Clerk of the Court will substitute Jo Gentry for Timothy Filson, on the docket, as the respondent warden, and update the captions of the actions to reflect this change.

It is further ordered that, in Case No. 3:15-cv-00487-MMD-WGC, petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 30) is denied. Petitioner is granted a certificate of appealability with respect to Ground 1 of his amended petition for writ of habeas corpus. The Clerk of the Court is directed to enter judgment accordingly.

It is further ordered that, in Case No. 2:16-cv-00241-MMD-WGC, petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 14) is denied. Petitioner is granted a certificate of appealability with respect to Grounds 2 and 3 of his second amended petition for writ of habeas corpus. The Clerk of the Court is directed to enter judgment accordingly.

DATED THIS 25th day of April 2018.

MIRANDA M. DU,
UNITED STATES DISTRICT JUDGE